## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

FILED
IN OPEN COURT

AUG 27 2019

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 1:19-CR-253 |
| v. | **Count 1:** 18 U.S.C. § 371 – Conspiracy to Commit Criminal Copyright Infringement |
| KRISTOPHER LEE DALLMANN (Counts 1-5, and 12-15) | |
| DARRYL JULIUS POLO a/k/a djppimp (Counts 1, 6-11, and 16-19) | **Counts 2-3:** 17 U.S.C. §§ 506(a)(1)(A) and 106(1) and (3); 18 U.S.C. § 2319(b)(3) and 2 – Criminal Copyright Infringement by Reproduction or Distribution and Aiding and Abetting |
| DOUGLAS M. COURSON (Count 1) | **Counts 4-5:** 17 U.S.C. §§ 506(a)(1)(A) and 106(4); 18 U.S.C. §§ 2319(b)(3) and 2 – Criminal Copyright Infringement By Public Performance and Aiding and Abetting |
| FELIPE GARCIA (Count 1) | |
| JARED EDWARD JAUREQUI a/k/a Jared Edwards (Count 1) | |
| PETER H. HUBER (Count 1) | **Counts 6-7:** 17 U.S.C. §§ 506(a)(1)(C); 18 U.S.C. § 2319(d)(2) and 2 – Criminal Copyright Infringement by Distributing a Copyrighted Work Being Prepared for Commercial Distribution and Aiding and Abetting |
| YOANY VAILLANT a/k/a Yoany Vaillant Fajardo (Count 1) | |
| LUIS ANGEL VILLARINO (Count 1) | |
| *Defendants.* | **Counts 8-9:** 17 U.S.C. §§ 506(a)(1)(A) and 106(1) and (3); 18 U.S.C. § 2319(b)(3) and 2 – Criminal Copyright Infringement by Reproduction or Distribution and Aiding and Abetting |

| | |
|---|---|
| Counts 10-11: | 17 U.S.C. §§ 506(a)(1)(A) and 106(4); 18 U.S.C. §§ 2319(b)(3) and 2 – Criminal Copyright Infringement By Public Performance and Aiding and Abetting |
| Counts 12-14: | 18 U.S.C. §§ 1956(a)(1)(A)(i) and B(i) and 2 – Money Laundering and Aiding and Abetting |
| Count 15: | 18 U.S.C. §§ 1956(a)(3)(A) and (B) and 2 – Money Laundering and Aiding and Abetting |
| Counts 16-18: | 18 U.S.C. §§ 1956(a)(1)(A)(i) and (B)(i) and 2 – Money Laundering and Aiding and Abetting |
| Count 19: | 18 U.S.C. §§ 1956(a)(3)(A) and (B) and 2 – Money Laundering and Aiding and Abetting |
| | Forfeiture Notice |

## INDICTMENT

August 2019 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

## INTRODUCTION

At all times relevant to this Indictment:

1.    From in or about 2007 to on or about November 16, 2017, defendant

**KRISTOPHER LEE DALLMANN**, with the assistance of others known and unknown

to the Grand Jury, including defendants **DARRYL JULIUS POLO a/k/a djppimp**,

2

**DOUGLAS M. COURSON, FELIPE GARCIA, JARED EDWARD JAUREQUI a/k/a Jared Edwards, PETER H. HUBER, YOANY VAILLANT a/k/a Yoany Vaillant Fajardo**, and **LUIS ANGEL VILLARINO**, operated Jetflicks, an online, subscription-based service that permitted users to stream and, at times, download copyrighted television programs without the permission of the relevant copyright owners. The defendants willfully reproduced tens of thousands of copyrighted television episodes, without the permission of copyright owners, and distributed the infringing programs to individuals located throughout the United States, including many individuals located within the Eastern District of Virginia. The estimated harm to television program copyright owners as well as licensed streaming services caused by Jetflicks was millions of dollars.

2. Jetflicks functioned as a subscription-based service akin to well-known, legitimate online video streaming and download services, such as Netflix, Hulu, Vudu, and Amazon Prime Video. That is, for a subscription fee as little as $9.99 per month, Jetflicks enabled its subscribers to watch an unlimited number of commercial-free television programs, often within days of the episodes' first airings, on their internet-connected devices. Jetflicks sought to make its television programs available on numerous devices, platforms, and software including the Apple iPhone, Apple iPad, Android phone, Android tablet, Apple Safari, Google Chromecast, Microsoft Edge, Apple TV, Amazon Fire TV, Microsoft XBox One, Sony Play Station 4, Nintendo Wii U, Samsung TV, and Roku. Jetflicks, at one point in its history, claimed to offer more than 183,200 television episodes and have more than 37,000 subscribers.

3

3. Jetflicks obtained television programs from sites hosting infringing content including torrent sites and Usenet sites, using automated programs and databases such as SickRage, Sick Beard, SABnzbd, and TheTVDB.

a. A torrent site refers to a website that uses the BitTorrent communication "protocol" (a set of rules that different computer systems agree to use) for peer-to-peer file sharing, which commonly includes the distribution and reproduction of digital video files including television programs and motion pictures. Instead of downloading a file such as a television program or motion picture from a single source, BitTorrent enables users to connect through the internet to the devices of other BitTorrent users in order to download and upload simultaneously pieces of the work from and to other users. To send or receive a television program or motion picture through BitTorrent, a person uses a computer program called a BitTorrent client on his or her internet-connected device. A user who wants to share a television program or motion picture creates a "torrent file" that he or she makes available to others, often through a torrent site. That torrent file contains instructions for identifying the Internet Protocol addresses of other torrent site users who have the television program and for downloading that work from those users. Once a user downloads all the pieces of the television program or motion picture from the other torrent site users, the television program or motion picture is automatically reassembled into its original form and is ready to be watched. As a result, a torrent site with a lot of users willing to share their libraries of television programs or motion pictures can facilitate fast downloading of works from multiple computers that possess those works and are willing to share them.

4

b.      Usenet was originally designed as an electronic bulletin-board service.  Once it started including binary newsgroups, it became a popular place to find files (a binary file is a computer file that is not a text file).  One particular Usenet site started indexing the binaries available on Usenet and created the NZB file format.  An NZB file is basically the Usenet equivalent of a BitTorrent torrent file, in that it points to a file available elsewhere on Usenet.  Many binaries available on Usenet are infringing television programs and motion pictures.  Unlike torrent sites, Usenet is not peer-to-peer and providers typically impose restrictions on their users such as requiring payment, limiting the number of days of file retention, or capping the amount of data that can be downloaded.  Many copyrighted works are made available on Usenet without permission of the copyright owners, and some Usenet providers and indexers are designed to facilitate searching and downloading of infringing material.

c.      SickRage (which is also known now as SickChill) is an automated program that downloads, processes, and then stores television programs on a computer or other device.  When a user adds a television episode to SickRage, the program pulls information about the show (such as air date and episode name or number) from an internet database such as thetvdb.com or tvrage.com.  Because SickRage knows when a new episode of a selected show will air, it will start searching at the appropriate time for that file on any torrent and NZB sites selected by the user.  SickRage offers over 40 torrent sites including some of the biggest pirate sites in the world, such as The Pirate Bay, RARBG, and Torrentz, and allows users to enable NZB search as well.  Users can establish quality settings, instructing SickRage to only download files with a certain

quality level. Moreover, when the file is downloaded, SickRage does post-processing on the file, moves it to a folder on your device, and even renames it.

        d.      Sick Beard works similarly to SickRage, focusing more on Usenet sites rather than torrent sites. Like SickRage, Sick Beard is an automated program that downloads, processes, and stores television programs on a computer or other device. Sick Beard supports a number of NZB indexers that are well-known for offering infringing video content.

        e.      SABnzbd is an automated program that downloads, verifies, and stores NZB files from Usenet. Users can use programs such as SickRage or Sick Beard to browse Usenet through NZB indexers and locate NZB files they want, such as specific television programs; once they find the files they desire, they can download them through SABnzbd, where those files can then be further processed through SickRage, Sick Beard, or similar programs.

        f.      TheTVDB or TVDB is an online database of television programs located at thetvdb.com that includes television series, season, and episode information and images that can be used by software and websites to give information about specific television programs offered for streaming or downloading in video libraries.

        4.      At various times, Jetflicks used the domains jetflicks.mobi, jetflicks.net, and jetflicks.com, as well as servers and computers in the United States and Canada to search for, download, process, store, stream, and make available for download infringing television programs.

        5.      From in or about 2014 to the present, defendant **POLO** operated iStreamItAll ("ISIA"), an online, subscription-based service that permitted users to

6

stream and download copyrighted television programs and motion pictures without the permission of the relevant copyright owners. **POLO** willfully reproduced tens of thousands of copyrighted television episodes and motion pictures, without the permission of copyright owners, and distributed the infringing programs to individuals located throughout the United States, including many individuals located within the Eastern District of Virginia. The estimated harm to television program and motion picture copyright owners as well as licensed streaming services caused by ISIA was millions of dollars.

6.     Like Jetflicks, ISIA functioned as a subscription-based service akin to well-known, legitimate online video streaming and download services. In fact, ISIA's website reveals that the service has an interface and operation similar to Jetflicks, except that ISIA includes both motion pictures and commercial-free television programs. ISIA's website, at one point in its history, stated that ISIA "[w]orks on all your favorite devices, including: Kodi Addon, Amazon Firestick, Android TV (Nvidia Shield, Xiaomi Mi Box, Sony Bravia & Sharp Aquous Smart TV, etc...) Chromecast, Android Phones, iPhones, iPads, AppleTV (Airplay), PC & Mac, SmartTV's, XBox One, Almost anything with a web browser." Subscription plans included a monthly option at $19.99, a quarterly option at $54.99, a semi-annual option at $99.99, and a yearly option at $179.99. ISIA's website also stated that it offered "Unlimited Commercial Free TV Shows & Movies" with "Over 3828 TV Series, 115849 TV Episodes, 10511 Movies, Current Season Daily Updates From All Your Favorite TV Series!" Moreover, in 2017, ISIA's website claimed "WE HAVE MORE CONTENT THEN ALL OF OUR COMPETITORS, JETFLICKS, NETFLIX, HULU, VUDU, AMAZON PRIME & MORE." However,

7

according to copyright owners, ISIA—like Jetflicks—provided content without their permission and without any compensation.

7.      ISIA obtained television programs from sites hosting infringing content (including torrent sites and Usenet sites), using automated programs such as SickRage, Sick Beard, and SABnzbd.

8.      At various times, ISIA used the domains istreamitall.com and istreamitall.mobi, as well as servers and computers in the United States and Canada to search for, download, process, store, stream, and make available for download infringing television programs.

9.      Since in or about at least 2012, **POLO** also operated other sites used to obtain infringing content, including SmackDownOnYou, a pay-only NZB indexer site that he used for income and to obtain television programs and motion pictures for ISIA.

## COUNT ONE

(18 U.S.C. § 371 – Conspiracy to Commit Criminal Copyright Infringement)

THE GRAND JURY CHARGES THAT:

10.     The factual allegations contained in Paragraphs 1 through 4 are re-alleged and incorporated as if set forth herein in their entirety.

11.     Beginning at least in or about 2007 and continuing until at least on or about November 16, 2017, in the Eastern District of Virginia and elsewhere, the defendants,

**KRISTOPHER LEE DALLMANN,
DARRYL JULIUS POLO a/k/a djppimp,
DOUGLAS M. COURSON,
FELIPE GARCIA,
JARED EDWARD JAUREQUI a/k/a Jared Edwards,
PETER H. HUBER,
YOANY VAILLANT a/k/a Yoany Vaillant Fajardo, and
LUIS ANGEL VILLARINO**

each knowingly and intentionally combined, conspired, and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to willfully, and for purposes of commercial advantage and private financial gain, infringe copyrights by reproduction and distribution of at least ten copies of one or more copyrighted works during a 180-day period with a total retail value of more than $2,500, in violation of Title 17, U.S. Code, Section 506(a)(1)(A), and Title 18, U.S. Code, Section 2319(b)(1).

### Purpose of the Conspiracy

12.     It was the general purpose of the conspiracy for the defendants and others to enrich themselves by searching the internet for copies of copyrighted television programs, and then, without permission from the copyright owners, reproduce tens of thousands of those works and subsequently distribute and stream the works to tens of

9

thousands of paying subscribers located throughout the United States, including hundreds of individuals located within the Eastern District of Virginia.

## Manner and Means of the Conspiracy

13.     In furtherance of the conspiracy, defendants and others known and unknown to the Grand Jury employed, among others, the following manner and means:

a.     It was part of the conspiracy that members of the conspiracy did computer coding, database programming, and related technical work to create, maintain, and run Jetflicks.

b.     It was further part of the conspiracy that members of the conspiracy worked on graphic design for the Jetflicks website and sought to promote its popularity through search engine optimization, social media posts, and other means.

c.     It was further part of the conspiracy that members of the conspiracy used automated and manual software applications to search torrent and Usenet sites on the internet for copyrighted television programs, especially programs that had been aired recently, and to download tens of thousands of those shows without permission from the copyright owners.

d.     It was further part of the conspiracy that infringing copies of copyrighted works were reproduced and stored on computer servers owned and leased in the United States and Canada, in order to further the distribution, streaming, and additional reproduction of those copyrighted works.

e.     It was further part of the conspiracy that members of the conspiracy used automated and manual software applications to process and repair the copyrighted television programs to make them easier for Jetflicks subscribers to search,

use, view, and download.

f.      It was further part of the conspiracy that members of the conspiracy sold subscriptions to tens of thousands of customers around the United States, including many in the Eastern District of Virginia, making Jetflicks' inventory of tens of thousands of copyrighted television programs available for streaming and, at times, downloading.

g.      It was further part of the conspiracy that members of the conspiracy searched the internet for users who were allowing others to obtain Jetflicks content for free by sharing Jetflicks logins and passwords, and sought to secure the Jetflicks site and servers to prevent individuals from "stealing" Jetflicks content.

h.      It was further part of the conspiracy that members of the conspiracy would seek out new and popular television programs that they could distribute and stream without permission of the copyright owners, and would search manually for television programs on other websites hosting infringing content.

i.      It was further part of the conspiracy that members of the conspiracy made infringing copies of copyrighted works available through Jetflicks for streaming and, at times, for downloading.

j.      It was further part of the conspiracy that members of the conspiracy were notified that Jetflicks was engaged in copyright infringement and that Jetflicks was blocked from using certain applications and services, but they continued to operate and expand Jetflicks.

k.      It was further part of the conspiracy that members of the conspiracy searched for information on industry and law enforcement actions against

11

internet piracy, undercover operations in this area, and the provisions of the Digital Millennium Copyright Act ("DMCA"), codified at Title 17, U.S. Code, Section 512, which provides, among other things, that when an online service provider receives notice from a copyright owner or agent of the copyright owner regarding infringing material at the provider, it must act expeditiously to remove that material.

l.      It was further part of the conspiracy that members of the conspiracy financially profited from the reproduction, distribution, and streaming of infringing copies of copyrighted works made available to users through Jetflicks.

m.      It was further part of the conspiracy that members of the conspiracy performed various roles that served to promote the success of the conspiracy. Many members held multiple roles, not just one. Some of the roles included, but were not limited, to the following:

1)      <u>Management</u>: **DALLMANN** ran the Jetflicks operation but **COURSON** and later **JAUREQUI** assisted with some of the management responsibilities. Tasks included making strategic decisions about the direction and future of Jetflicks; helping with hiring decisions; and dealing with vendors and payment processors.

2)      <u>Computer programming and coding</u>: **DALLMANN, POLO, HUBER, VAILLANT,** and **VILLARINO** handled Jetflicks' most technical tasks—those involving computer programing and coding. Duties included writing and revising computer scripts for the Jetflicks website and/or mobile applications ("apps"), which would download, process, store, stream, and distribute infringing television programs on multiple devices using SickRage, Sick Beard, SABnzbd, NZB indexer sites,

12

and similar software or internet locations; resolving "broken" television programs or television series that needed to be "updated"; answering questions about how to use Jetflicks on multiple video streaming platforms and testing the service on different devices; providing advice on marketing strategies including improving Jetflicks' search engine and mobile app store rankings, increasing internet and mobile traffic to Jetflicks, boosting the number of customers, advertising and distributing Jetflicks mobile apps, and developing email and social media campaigns; and working on security tools including encryption and "digital rights management" to prevent others from "stealing" Jetflicks infringing television programs.

          3)    <u>Design of website, apps, and customer interface and technical assistance</u>: **DALLMANN, COURSON, GARCIA, JAUREQUI, HUBER, POLO, VAILLANT,** and **VILLARINO** had duties helping design and improve the Jetflicks website, mobile apps, and customer interface, and also handled related technical tasks. Responsibilities included working with Sick Beard, SickRage, SABnzbd, NZB indexer sites, and similar software or internet locations to download, process, store, stream, and distribute infringing television programs requested by customers as well as new and upcoming shows; monitoring the load of Jetflicks' servers and ensuring the functioning of the servers; helping choose hardware to run Jetflicks; assisting in the design of the Jetflicks website and mobile apps as well as accompanying marketing and social media communications; identifying issues with the Jetflicks subscriber interface, the Jetflicks television program inventory, and the quality of television programs and accompanying season/episode information, and seeking to improve these; creating lists of Jetflicks television programs; and testing Jetflicks on different devices.

4)      Subscriptions and revenue: **DALLMANN, COURSON, JAUREQUI, HUBER, POLO, VAILLANT**, and **VILLARINO** had duties of fixing issues with customer subscriptions and billing; tracking Jetflicks' actual or expected revenue; working on ideas to increase profitability and encourage additional subscribers and subscriber renewals; and helping determine popular television programs based on clicks and feedback from customers and then using that information to download these or similar shows.

5)      Customer support: **DALLMANN, COURSON, GARCIA**, and **JAUREQUI** received and responded to complaints, requests, and questions from subscribers regarding missing or "broken" shows, billing issues, and adding new shows to the Jetflicks database; shared information about "broken" and requested shows with other members of the conspiracy; and drafted lists of subscribers and emails to be sent to customers.

**Overt Acts**

14.      It further was part of the conspiracy that at least the following acts in furtherance of and to effect the objects of the above-described conspiracy were committed in the Eastern District of Virginia and elsewhere:

a.      From at least January 5, 2009, until at least November 16, 2017, members of the conspiracy owned, rented, and used computer servers located in the United States and Canada to help run Jetflicks, including locating, reproducing, processing, storing, distributing, and streaming infringing copies of copyrighted materials.

b.      From at least December 29, 2008, to at least November 16, 2017, members of the conspiracy accessed and controlled numerous internet domains related to Jetflicks, including jetflicks.mobi, jetflicks.net, and jetflicks.com.

c.      On or about May 20, 2012, members of the conspiracy caused a $29.99 charge to Mastercard number x9622, which belonged to M.G., a resident of Arlington, Virginia, in the Eastern District of Virginia, for a six-month Jetflicks subscription.

d.      On or about July 24, 2012, members of the conspiracy caused a $29.99 charge to Visa card number x2153, which belonged to M.T., a resident of Ashburn, Virginia, in the Eastern District of Virginia, for a six-month Jetflicks subscription.

e.      On or about November 16, 2012, **DALLMANN** received from the Motion Picture Association of America ("MPAA"), on behalf of its members, cease-and-desist letters that were sent by hand delivery, Federal Express, and email and that demanded that Jetflicks discontinue its unauthorized distribution of copyrighted material.

f.      On or about November 19, 2012, **POLO** searched the internet for "mpaa website moles," "fake mpaa user account," "correct letter to dmca response," and "dmca reply," and visited various related sites, including an article entitled "MPAA / RIAA Want U.S. to Help Quash The Pirate Bay."

g.      On or about January 7, 2014, **COURSON** emailed **DALLMANN** to inform him, "we do have the shameless episode S04e01 but it doesn't air until 1-12-14 so we are unable to run it as the basic info in sick beard from TVDB is not yet available." "Simple Pleasures," episode one of season four of the television program "Shameless,"

aired on Showtime on January 12, 2014.

h.      On or about January 17, 2015, **GARCIA** emailed **COURSON** to complain, "A lot of the latest shows (example: little women LA, Snooki and Jwow, Penny Dreadful) are not airing the following day." **COURSON** then responded, "(those shows generally take several days before the files are available, nothing we can do to make it faster, they are uploaded as soon as I see the files become available) - you can see some of the shows I am waiting for by going to Sickbeard Backlog - I pull all these shows at least once a day until they come in."

i.      On or about March 9, 2015, and again on or about March 9, 2016, members of the conspiracy caused a charge of $133.75 to Visa card number x7270, which belonged to L.S., a resident of Arlington, Virginia, in the Eastern District of Virginia, for an annual Jetflicks subscription with additional services.

j.      On or about September 4, 2015, **COURSON** emailed **HUBER** and stated, "Peter,Not sure what you changed but I am trying to upload shows and nothing is happening.  It shows  Last copy order still active!  And none of the files (America's Got Talent S10E22) are leaving the Sort file  Please take a look at this and let me know… I need to get shows uploaded." Episode 22 of Season 10 of "America's Got Talent" did not air until September 15, 2015.

k.      On or about July 5, 2015, **COURSON** emailed **DALLMANN**, "I am trying to work the backlog and this is the response I am getting upon placing the file into "Torrents" in the "Downloads" folder  The item '[kat.cr]australias.next.top.model. s09e10.finale.hdtv.x264.hector.mp4.torrent' can't be copied because there isn't enough free space."  Kat.cr referred to one of the domains for the torrent site Kickass Torrents.

l.     On or about October 9, 2015, members of the conspiracy received a comment on the Jetflicks Facebook page from user J.W. that read, "You do realize jetflicks is some bootleg shit right?  You might be paying, but this is totally illegal content."

m.     On or about February 24, 2016, May 24, 2016, and November 20, 2016, members of the conspiracy caused a $19.99 charge to Visa card number x3600, which belonged to B.P., a resident of Alexandria, Virginia, in the Eastern District of Virginia, for a three-month Jetflicks subscription.

n.     On or about April 15, 2016, members of the conspiracy caused a charge of $19.99 to Visa card number x1030, which belonged to S.M., a resident of Alexandria, Virginia, in the Eastern District of Virginia, for a three-month Jetflicks subscription.

o.     On or about July 28, 2016, a member of the conspiracy using the email address support@jetflicks.com sent an email to **POLO**, stating, "You are a vital team member… but thats the whole thing… we are a team […]  Remember, I have to communicate to our clients when they have legitimate issues.  I also have to communicate to Kris [**DALLMANN**] when I brag and say you earned every penny of your pay.  I want to be able to show that we are functioning as a team and that issues are resolved as fast as they are noticed."  The email went on to discuss plans for a "massive" project to increase the number of television programs at Jetflicks, improve the quality of the new uploaded shows and avoid customer complaints, and improve the ways the television programs displayed in Jetflicks.

p.     On or about August 5, 2016, **DALLMANN** emailed **VAILLANT** a file called "archive.zip" with subject "Server Scripts." This zip file contained multiple PHP computer scripts for uploading TV shows, processing the shows, checking the shows, changing the shows' filenames, "ripping" subtitles, putting the shows in a database for approval, and getting server status; many of the scripts contained the text "This is programmed by Darryl Polo (darrylpolo@gmail.com)" as well as the server name jetflicks.mobi and password. Some of the scripts state, "THIS IS TO BUILD A TABLE OF ALL THE TV SHOWS FOR THE AUTOMATIC MATRIX."

q.     On or about August 9, 2016, members of the conspiracy caused a six-month subscription to begin for an undercover FBI agent in the Eastern District of Virginia, with a seven-day free trial.

r.     On or about August 9, 2016, members of the conspiracy, without permission from the copyright owner, caused the streaming of the episode "Norman Saves the World" of the television program "Ray Donovan," which was originally aired on Showtime on August 7, 2016, when an undercover agent streamed this work in the Eastern District of Virginia from Jetflicks.

s.     On or about August 15, 2016, members of the conspiracy caused a $29.99 charge to American Express x4255, which belonged to an undercover FBI agent located in the Eastern District of Virginia, for a six-month Jetflicks subscription.

t.     On or about October 3, 2016, using his Bank of America account x4488 in the name of Kris Dallmann dba Rent-a-Geek, **DALLMANN** paid $680.04 to a company headquartered in Monroe, Louisiana, to lease IP address 67.77.105.136 that he used with Jetflicks.

18

u.    On or about November 20, 2016, members of the conspiracy caused a $19.99 charge to Visa card number x3600, which belonged to B.P., a resident of Alexandria, Virginia, in the Eastern District of Virginia, for a three-month Jetflicks subscription.

v.    On or about December 29, 2016, members of the conspiracy, without permission from the copyright owner, caused the streaming of a copy of the episode "Paradise" of the television program "The OA," which was originally aired on Netflix on December 16, 2016, when an undercover agent streamed this work in the Eastern District of Virginia from Jetflicks.

w.    On or about January 4, 2017, members of the conspiracy, without permission from the copyright owner, caused the distribution of a copy of the episode "Blood Washed Away" of the television program "12 Monkeys," which was originally aired on Syfy on July 11, 2016, when an undercover agent downloaded this work in the Eastern District of Virginia from Jetflicks.

x.    On or about January 4, 2017, members of the conspiracy, without permission from the copyright owner, caused the distribution of a copy of the episode "Memory of Tomorrow" of the television program "12 Monkeys," which was originally aired on Syfy on July 18, 2016, when an undercover agent downloaded this work in the Eastern District of Virginia from Jetflicks.

y.    On or about January 10, 2017, members of the conspiracy caused a $29.99 charge to Capital One Bank card number x1449, which belonged to R.L., a resident of Woodbridge, Virginia, in the Eastern District of Virginia, for a six-month Jetflicks subscription.

z.      On or about January 11, 2017, using his Wells Fargo bank account number x6241 in the name of Jetflicks, LLC, **DALLMANN** paid $59.95 to a company headquartered in Reston, Virginia, to provide Domain Name Servers services for Jetflicks.

aa.      On or about January 23, 2017, members of the conspiracy caused a charge of $133.75 to Visa card number x4242, which belonged to M.B., a resident of Ashburn, Virginia, in the Eastern District of Virginia, for an annual Jetflicks subscription with additional services.

bb.      On or about January 27, 2017, using his Wells Fargo bank account number x6241 in the name of Jetflicks, LLC, **DALLMANN** paid $400 to **VILLARINO** for services for Jetflicks.

cc.      On or about February 10, 2017, using his Wells Fargo bank account number x6241 in the name of Jetflicks, LLC, **DALLMANN** paid $158 to a hosting provider in Canada to rent one or more servers to host Jetflicks.

dd.      On or about April 3, 2017, **DALLMANN** and **VILLARINO** had the following exchange:

| **DALLMANN** | When Jetflicks starts making crazy $$ in a few months... How much do you need to make to be full-time for Jetflicks only? |
| **VILLARINO** | 120k a year |
| **DALLMANN** | That's doable... |
| **DALLMANN** | Jetflicks made 750k 3 years ago... 500k in 2015... And a sad 350k last year |
| **DALLMANN** | If we didn't have the people that took advantage, we'd be awesome |

ee.      On or about April 18, 2017, members of the conspiracy caused a $16.97 charge to Visa card x0104, which belonged to an undercover FBI agent located in

the Eastern District of Virginia, for a one-month Jetflicks subscription.

ff.     On or about May 18, 2017, **DALLMANN** and **VILLARINO** had

the following exchange:

| **DALLMANN** | let me explain the background of how we got there first... |
|---|---|
| **DALLMANN** | the shows were out of sync with what was on the servers... |
| **DALLMANN** | and the script that launches shows automatically (the scripts on [servers] s1001-s1004) weren't launching the shows properly either... |
| **DALLMANN** | so we decided the best solution was to delete the entire shows database, and re-add the shows and have yonay [**VAILLANT**] create an admin interface where we could use this new scripting to add shows if there ever was an issue |
| **VILLARINO** | ok |
| **DALLMANN** | so he created it for us... which is the method you see when you go in the admin to... |
| **DALLMANN** | file manager - TV Shows |
| **DALLMANN** | he did a pretty good job creating his script that adds shows to the database... |
| **VILLARINO** | ok |
| **DALLMANN** | then he tried to fix the scripting on s1001-s1004 so that new shows and episodes would launch in the same methods he created in his scripting |
| **DALLMANN** | obviously that wasn't perfect... since special characters aren't handled the same way |
| **DALLMANN** | which i don't blame him for... he was just trying to fix darryl [**POLO**]'s scripting [...] |
| **VILLARINO** | "Add-TV Show" was develop by ? |
| **DALLMANN** | Yonay [**VAILLANT**] |
| **DALLMANN** | that was the scripting that he developed to get all shows via server-side and repopulate the database based on that information |
| **DALLMANN** | using the TVDB and Sickrage |
| **DALLMANN** | so basically he took the folder name, and used that in conjunction with the TVDB ID, and the files listed on the server to repopulate the database |
| **DALLMANN** | i will take credit for the design...lol |

gg.     On or about May 3, 2017, **DALLMANN** and **VILLARINO** had the following exchange:

| DALLMANN | and what should we start working on, lol |
|---|---|
| VILLARINO | When you will have the new design ready? |
| DALLMANN | well, security obviously, but we'll have to adapt our show launching system |
| DALLMANN | and we will be using a different version of SickRage API [Application Programming Interface]... |
| VILLARINO | Ok |
| DALLMANN | so maybe that part of it... once we know content can go into the correct folders, be secure, and write all info to the database properly from the SickRage API... then we can finish the site |
| DALLMANN | sound cool? |
| DALLMANN | so Security with Flowplayer... 1 |
| DALLMANN | Setup 2 Servers in the office ...2 |
| DALLMANN | create launch modifications with Sickrage...3 |
| DALLMANN | write to database... 3 (part 2) |
| DALLMANN | lol |
| DALLMANN | finish site... 4 |
| VILLARINO | Ok |
| DALLMANN | awesome, I'll start creating more content tonite... and see you tomororw... what time? |

hh.     Between on or about May 4 and 5, 2017, **DALLMANN** and **VILLARINO** communicated about encrypting the television programs being offered on Jetflicks. **DALLMANN** expressed an interest in encrypting ".mp4 files . . . so there aren't open files sitting on the server," which led to the following exchange on or about May 5, 2017:

| DALLMANN | I suppose I can do the encryption here... it gives me more control... then just save the unencrypted files instead of the encrypted ones as backups... |
|---|---|
| DALLMANN | i dunno, you decide, lol |
| VILLARINO | read this https://github.com/kaltura/nginx-vod-module/issues/596 |
| DALLMANN | so it'll be DRM [digital rights management] instead of the regular encryption? |

| DALLMANN | https://github.com/Axinom/clearkey-server |
|---|---|
| VILLARINO | I already ask the developer fi we can secure the video with out a license server |
| DALLMANN | haha, that wasn't there when i opened the page |
| DALLMANN | ☺ |
| DALLMANN | if we need a license server, that link will probably be what we need... and it's no big deal... as long as we have redundant servers in different locations |
| DALLMANN | but I'd rather not have a license server if possible... but be as secure as if we had a license server configuration |
| DALLMANN | PlayReady isn't an option... |
| VILLARINO | ok |
| DALLMANN | just saying...lol |
| DALLMANN | let's just say... the requirements are not aligned with our business model... |
| DALLMANN | ☺ |

PlayReady is a digital rights management technology developed by Microsoft that is intended to prevent the unauthorized copying of media files; to use PlayReady, a company must enter into a license agreement with Microsoft.

      ii.    On or about May 20, 2017, members of the conspiracy caused a charge of $133.75 to a Chase Bank card Visa number x0563, which belonged to J.P., a resident of Alexandria, Virginia, in the Eastern District of Virginia, for an annual Jetflicks subscription with additional services.

      jj.    On or about May 22, 2017, **DALLMANN** corresponded with **VILLARINO** that the episodes were launching without the names being changed from SickRage, stating, "Hey Luis, I'm sure you're at work, but there's an issue we're having with the shows launching." **VILLARINO** responded, "What is the problem?" **DALLMANN** then noted, "The episodes are launching without changing the name, and then launching them as seasons." He then sent **VILLARINO** a screenshot of five episodes with file names showing that they came from pirate sites including, for example,

23

"Switched.at.Birth.S05E10.1080p.AMZN.WEBRip.DD5.1.x264-KiNGS-3G.mp1." This was the episode "Long Live Love" of the television program "Switched at Birth," which originally aired April 11, 2017, on Freeform and was then available on Amazon Prime Video; according to the file name, the episode was "ripped" from Amazon by the KiNGS, a "release group" that distributed infringing content. **DALLMANN** then responded, "Jared [**JAUREQUI**] took it upon himself to put shows in the folders without renaming them properly." Shortly after that, **DALLMANN** told **VILLARINO**, "We launched over 600 episodes the past 4 days."

kk.    On or about November 16, 2017, **DALLMANN** possessed two computers (one of which was connected to an additional four hard drives) that contained, among other things, tens of thousands of downloaded video files and thousands of torrent files, with a creation date of the video files ranging from in or about August 2002 to November 16, 2018. For example, **DALLMANN** possessed multiple copies of all seven episodes of season 7 of "Game of Thrones," which aired on HBO from July 16, 2017, to August 27, 2017. These tens of thousands of downloaded video files included at least 10 copies of one or more copyrighted works with a total retail value of more than $2,500.

ll.    On or about November 16, 2017, **DALLMANN** possessed a download folder on a computer that showed numerous downloaded infringing television programs. For example, on June 27, 2017, he downloaded all 12 episodes of "Dark Shadows," a 1991 television series.

mm.    On or about November 16, 2017, **DALLMANN** caused the download of the episode "Borderlines" of the television program "SEAL Team," which

24

was originally aired on CBS Television on November 15, 2017, from the torrent site

RARBG.

(All in violation of Title 18, U.S. Code, Section 371, Title 18, U.S. Code, Section
506(a)(1)(A) & (C), and Title 18, U.S. Code, Sections 2319(b)(3) & (d)(2).)

## COUNT TWO

(17 U.S.C. §§ 506(a)(1)(A) and 106(1) and (3); 18 U.S.C. § 2319(b)(3) and 2 – Criminal
Copyright Infringement by Reproduction or Distribution and Aiding and Abetting)

THE GRAND JURY CHARGES THAT:

      15.    The factual allegations contained in Paragraphs 1 through 4 are re-alleged
and incorporated as if set forth herein in their entirety.

      16.    On or about January 4, 2017, in the Eastern District of Virginia and
elsewhere, the defendant,

### KRISTOPHER LEE DALLMANN,

did willfully, and for purposes of commercial advantage and private financial gain,

infringe a copyright in the episode "Blood Washed Away" of the television program "12

Monkeys" by distributing a copy over the internet.

(All in violation of Title 17, U.S. Code, Sections 506(a)(1)(A) and 106(1) and (3), and
Title 18, U.S. Code, Sections 2319(b)(3) and 2.)

26

## COUNT THREE

(17 U.S.C. §§ 506(a)(1)(A) and 106(1) and (3); 18 U.S.C. § 2319(b)(3) and 2 – Criminal Copyright Infringement by Reproduction or Distribution and Aiding and Abetting)

THE GRAND JURY CHARGES THAT:

17.     The factual allegations contained in Paragraphs 1 through 4 are re-alleged and incorporated as if set forth herein in their entirety.

18.     On or about January 4, 2017, in the Eastern District of Virginia and elsewhere, the defendant,

**KRISTOPHER LEE DALLMANN,**

did willfully, and for purposes of commercial advantage and private financial gain, infringe a copyright in the episode "Memory of Tomorrow" of the television program "12 Monkeys" by distributing a copy over the internet.

(All in violation of Title 17, U.S.Code, Sections 506(a)(1)(A) and 106(1) and (3), and Title 18, U.S.Code, Sections 2319(b)(3) and 2.)

## COUNT FOUR

(17 U.S.C. §§ 506(a)(1)(A) and 106(4); 18 U.S.C. §§ 2319(b)(3) and 2 – Criminal
Copyright Infringement By Public Performance and Aiding and Abetting)

THE GRAND JURY CHARGES THAT:

19.    The factual allegations contained in Paragraphs 1 through 4 are re-alleged and incorporated as if set forth herein in their entirety.

20.    On or about December 29, 2016, in the Eastern District of Virginia and elsewhere, the defendant,

**KRISTOPHER LEE DALLMANN,**

did willfully, and for purposes of commercial advantage and private financial gain, infringe a copyright in the episode "Paradise" of the television program "The OA" by streaming, that is, publicly performing the work over the internet.

(All in violation of Title 17, U.S. Code, Sections 506(a)(1)(A) and 106(4), and Title 18, U.S. Code, Sections 2319(b)(3) and 2.)

28

## COUNT FIVE

(17 U.S.C. §§ 506(a)(1)(A) and 106(4); 18 U.S.C. §§ 2319(b)(3) and 2 – Criminal
Copyright Infringement By Public Performance and Aiding and Abetting)

THE GRAND JURY CHARGES THAT:

21.     The factual allegations contained in Paragraphs 1 through 4 are re-alleged and incorporated as if set forth herein in their entirety.

22.     On or about August 9, 2016, in the Eastern District of Virginia and elsewhere, the defendant,

### KRISTOPHER LEE DALLMANN,

did willfully, and for purposes of commercial advantage and private financial gain, infringe a copyright in the episode "Norman Saves the World" of the television program "Ray Donovan," by streaming, that is, publicly performing the work over the internet.

(All in violation of Title 17, U.S. Code, Sections 506(a)(1)(A) and 106(4), and Title 18, U.S. Code, Sections 2319(b)(3) and 2.)

## COUNT SIX

(17 U.S.C. § 506(a)(1)(C)) and 18 U.S.C. §2319(d)(2) and 2 – Criminal Copyright
Infringement by Distributing a Copyrighted Work Being Prepared for Commercial
Distribution and Aiding and Abetting)

THE GRAND JURY CHARGES THAT:

23.     The factual allegations contained in Paragraphs 5 through 9 are re-alleged
and incorporated as if set forth herein in their entirety.

24.     On or about May 27, 2019, in the Eastern District of Virginia and
elsewhere, the defendant,

**DARRYL JULIUS POLO a/k/a djppimp,**

willfully, and for purposes of commercial advantage and private financial gain, infringed
a copyright by distributing a work being prepared for commercial distribution in the
United States, namely, the copyrighted motion picture "Us" by making it available on a
computer network accessible to members of the public, when the defendant knew and
should have known that the work was intended for commercial distribution.

(All in violation of Title 17, U.S. Code, Sections 506(a)(1)(C) and Title 18, U.S. Code,
Sections 2319(d)(2) and 2.)

## COUNT SEVEN

(17 U.S.C. §§ 506(a)(1)(C); 18 U.S.C. § 2319(d)(2) and 2 – Criminal Copyright
Infringement by Distributing a Copyrighted Work Being Prepared for Commercial
Distribution and Aiding and Abetting)

THE GRAND JURY CHARGES THAT:

25.     The factual allegations contained in Paragraphs 5 through 9 are re-alleged

and incorporated as if set forth herein in their entirety.

26.     On or about June 19, 2019, in the Eastern District of Virginia and

elsewhere, the defendant,

**DARRYL JULIUS POLO a/k/a djppimp,**

willfully, and for purposes of commercial advantage and private financial gain, infringed

a copyright by distributing a work being prepared for commercial distribution in the

United States, namely, the copyrighted motion picture "Dumbo," by making it available

on a computer network accessible to members of the public, when the defendant knew

and should have known that the work was intended for commercial distribution.

(All in violation of Title 17, U.S. Code, Sections 506(a)(1)(C) and Title 18, U.S. Code,
Sections 2319(d)(2) and 2.)

## COUNT EIGHT

(17 U.S.C. §§ 506(a)(1)(A) and 106(1) and (3); 18 U.S.C. § 2319(b)(3) and 2 – Criminal
Copyright Infringement by Reproduction or Distribution and Aiding and Abetting)

THE GRAND JURY CHARGES THAT:

27.     The factual allegations contained in Paragraphs 5 through 9 are re-alleged

and incorporated as if set forth herein in their entirety.

28.     On or about January 4, 2017, in the Eastern District of Virginia and

elsewhere, the defendant,

**DARRYL JULIUS POLO a/k/a djppimp,**

did willfully, and for purposes of commercial advantage and private financial gain,

infringe a copyright in the episode "Red on Red" of the television program "Shooter" by

distributing a copy over the internet.

(All in violation of Title 17, U.S. Code, Sections 506(a)(1)(A) and 106(1) and (3), and
Title 18, U.S. Code, Sections 2319(b)(3) and 2.)

## COUNT NINE

(17 U.S.C. §§ 506(a)(1)(A) and 106(1) and (3); 18 U.S.C. § 2319(b)(3) and 2 – Criminal
Copyright Infringement by Reproduction or Distribution and Aiding and Abetting)

THE GRAND JURY CHARGES THAT:

29.     The factual allegations contained in Paragraphs 5 through 9 are re-alleged

and incorporated as if set forth herein in their entirety.

30.     On or about January 4, 2017, in the Eastern District of Virginia and

elsewhere,  the defendant,

### DARRYL JULIUS POLO a/k/a djppimp,

did willfully, and for purposes of commercial advantage and private financial gain,

infringe a copyright in the of the motion picture "Finding Dory" by distributing a copy

over the internet.

(All in violation of Title 17, U.S. Code, Sections 506(a)(1)(A) and 106(1) and (3), and
Title 18, U.S. Code, Sections 2319(b)(3) and 2.)

## COUNT TEN

(17 U.S.C. §§ 506(a)(1)(A) and 106(4); 18 U.S.C. §§ 2319(b)(3) and 2 – Criminal
Copyright Infringement By Public Performance and Aiding and Abetting)

THE GRAND JURY CHARGES THAT:

31.    The factual allegations contained in Paragraphs 5 through 9 are re-alleged
and incorporated as if set forth herein in their entirety.

32.    On or about September 1, 2016, in the Eastern District of Virginia and
elsewhere, the defendant,

**DARRYL JULIUS POLO a/k/a djppimp,**

did willfully, and for purposes of commercial advantage and private financial gain,

infringe a copyright in the episode "How to Live" of the television program "Tyrant," by

streaming, that is, publicly performing the work over the internet.

(All in violation of Title 17, U.S. Code, Sections 506(a)(1)(A) and 106(4), and Title 18,
U.S. Code, Sections 2319(b)(3) and 2.)

## COUNT ELEVEN

(17 U.S.C. §§ 506(a)(1)(A) and 106(4); 18 U.S.C. §§ 2319(b)(3) and 2 – Criminal
Copyright Infringement By Public Performance and Aiding and Abetting)

THE GRAND JURY CHARGES THAT:

33.    The factual allegations contained in Paragraphs 5 through 9 are re-alleged

and incorporated as if set forth herein in their entirety.

34.    On or about December 29, 2016, in the Eastern District of Virginia and

elsewhere, the defendant,

**DARRYL JULIUS POLO a/k/a djppimp,**

did willfully, and for purposes of commercial advantage and private financial gain,

infringe a copyright in the motion picture "Inferno," by streaming, that is, publicly

performing the work over the internet.

(All in violation of Title 17, U.S. Code, Sections 506(a)(1)(A) and 106(4), and Title 18,
U.S. Code, Sections 2319(b)(3) and 2.)

## COUNT TWELVE

(18 U.S.C. §§ 1956(a)(1)(A)(i) and (B)(i) and 2—Money Laundering and Aiding
and Abetting)

THE GRAND JURY CHARGES THAT:

35.     The factual allegations contained in Paragraphs 1 through 4 are re-alleged
and incorporated as if set forth herein in their entirety.

36.     On or about January 10, 2017, in the Eastern District of Virginia and
elsewhere, the defendant,

**KRISTOPHER LEE DALLMANN,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate
and foreign commerce, namely, by making a payment through Wells Fargo bank account
number x6241 in the name Jetflicks, LLC to a company headquartered in Reston,
Virginia, to provide Domain Name Server services for Jetflicks, which involved the
proceeds of a specified unlawful activity, that is, criminal copyright infringement and
conspiracy to commit criminal copyright infringement, in the Eastern District of Virginia
and elsewhere, with the intent to promote the carrying on of that specified unlawful
activity, and knowing that the transaction was designed in whole and in part to conceal
and disguise the nature, location, source, ownership, and control of the proceeds of that
specified unlawful activity, and that while conducting and attempting to conduct such
financial transaction knew that the property involved in the financial transaction
represented the proceeds of that specified unlawful activity.

(All in violation of Title 18, U.S. Code, Sections 1956(a)(1)(A)(i) and (B)(i) and 2.)

## COUNT THIRTEEN

(18 U.S.C. §§ 1956(a)(1)(A)(i) and (B)(i) and 2—Money Laundering and Aiding and Abetting)

THE GRAND JURY CHARGES THAT:

37.     The factual allegations contained in Paragraphs 1 through 4 are re-alleged and incorporated as if set forth herein in their entirety.

38.     On or about January 27, 2017, in the Eastern District of Virginia and elsewhere, the defendant,

### KRISTOPHER LEE DALLMANN,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, namely, by making a payment through Wells Fargo bank account number x6241 in the name Jetflicks, LLC to **LUIS ANGEL VILLARINO** for computer programming and coding services to Jetflicks, which involved the proceeds of a specified unlawful activity, that is, criminal copyright infringement and conspiracy to commit criminal copyright infringement, in the Eastern District of Virginia and elsewhere, with the intent to promote the carrying on of that specified unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of that specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of that specified unlawful activity.

(All in violation of Title 18, U.S. Code, Sections 1956(a)(1)(A)(i) and (B)(i) and 2.)

37

## COUNT FOURTEEN

(18 U.S.C. §§ 1956(a)(1)(A)(i) and (B)(i) and 2—Money Laundering and Aiding
and Abetting)

THE GRAND JURY CHARGES THAT:

39.     The factual allegations contained in Paragraphs 1 through 4 are re-alleged
and incorporated as if set forth herein in their entirety.

40.     On or about February 9, 2017, in the Eastern District of Virginia and
elsewhere, the defendant,

### KRISTOPHER LEE DALLMANN,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate
and foreign commerce, namely, by making a payment through Wells Fargo bank account
number x6241 in the name Jetflicks, LLC to a hosting provider in Canada to rent one or
more servers to host Jetflicks, which involved the proceeds of a specified unlawful
activity, that is, criminal copyright infringement and conspiracy to commit criminal
copyright infringement, in the Eastern District of Virginia and elsewhere, with the intent
to promote the carrying on of that specified unlawful activity, and knowing that the
transaction was designed in whole and in part to conceal and disguise the nature, location,
source, ownership, and control of the proceeds of that specified unlawful activity, and
that while conducting and attempting to conduct such financial transaction knew that the
property involved in the financial transaction represented the proceeds of that specified
unlawful activity.

(All in violation of Title 18, U.S. Code, Sections 1956(a)(1)(A)(i) and (B)(i) and 2.)

## COUNT FIFTEEN

(18 U.S.C. §§ 1956(a)(3)(A) and (B) and 2—Money Laundering and Aiding and
Abetting)

THE GRAND JURY CHARGES THAT:

41.      The factual allegations contained in Paragraphs 1 through 4 are re-alleged
and incorporated as if set forth herein in their entirety.

42.      On or about October 3, 2016, in the Eastern District of Virginia and
elsewhere, the defendant,

### KRISTOPHER LEE DALLMANN,

with the intent to promote the carrying on of a specified unlawful activity, namely,
criminal copyright infringement and conspiracy to commit criminal copyright
infringement, and the intent to conceal and disguise the nature, location, source,
ownership, and control of property believed to be proceeds of that specified unlawful
activity, did knowingly conduct and attempt to conduct a financial transaction affecting
interstate and foreign commerce, namely, by making a payment through Bank of America
bank account number x4488 in the name of Kris Dallmann dba Rent-a-Geek to a
company headquartered in Monroe, Louisiana, to lease Internet Protocol address
67.77.105.136 for use with Jetflicks, which involved property represented by a law
enforcement officer and agent to be proceeds of that specified unlawful activity in the
Eastern District of Virginia and elsewhere, and property used to conduct and facilitate
that specified unlawful activity.

(All in violation of Title 18, U.S. Code, Sections 1956(a)(3)(A) and (B) and 2.)

39

## COUNT SIXTEEN

(18 U.S.C. §§ 1956(a)(1)(A)(i) and (B)(i) and 2—Money Laundering and Aiding
and Abetting)

THE GRAND JURY CHARGES THAT:

43.     The factual allegations contained in Paragraphs 5 through 9 are re-alleged
and incorporated as if set forth herein in their entirety.

44.     On or about June 2, 2017, in the Eastern District of Virginia and
elsewhere, the defendant,

**DARRYL JULIUS POLO a/k/a djppimp,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate
and foreign commerce, namely, by making a payment through Wells Fargo bank account
number x8077 in the name of L.P. to a company headquartered in Foster City, California,
to provide payment gateway services for ISIA, which involved the proceeds of a
specified unlawful activity, that is, criminal copyright infringement and conspiracy to
commit criminal copyright infringement, in the Eastern District of Virginia and
elsewhere, with the intent to promote the carrying on of that specified unlawful activity,
and knowing that the transaction was designed in whole and in part to conceal and
disguise the nature, location, source, ownership, and control of the proceeds of that
specified unlawful activity, and that while conducting and attempting to conduct such
financial transaction knew that the property involved in the financial transaction
represented the proceeds of that specified unlawful activity.

(All in violation of Title 18, U.S. Code, Sections 1956(a)(1)(A)(i) and (B)(i) and 2.)

## COUNT SEVENTEEN

(18 U.S.C. §§ 1956(a)(1)(A)(i) and (B)(i) and 2—Money Laundering and Aiding
and Abetting)

THE GRAND JURY CHARGES THAT:

45.     The factual allegations contained in Paragraphs 5 through 9 are re-alleged
and incorporated as if set forth herein in their entirety.

46.     On or about June 14, 2017, in the Eastern District of Virginia and
elsewhere, the defendant,

**DARRYL JULIUS POLO a/k/a djppimp,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate
and foreign commerce, namely, by making a payment through Wells Fargo bank account
number x8077 in the name of L.P. to a company headquartered in Atlanta, Georgia, for
high-speed internet service used to help run ISIA, which involved the proceeds of a
specified unlawful activity, that is, criminal copyright infringement and conspiracy to
commit criminal copyright infringement, in the Eastern District of Virginia and
elsewhere, with the intent to promote the carrying on of that specified unlawful activity,
and knowing that the transaction was designed in whole and in part to conceal and
disguise the nature, location, source, ownership, and control of the proceeds of that
specified unlawful activity, and that while conducting and attempting to conduct such
financial transaction knew that the property involved in the financial transaction
represented the proceeds of that specified unlawful activity.

(All in violation of Title 18, U.S. Code, Sections 1956(a)(1)(A)(i) and (B)(i) and 2.)

41

## COUNT EIGHTEEN

(18 U.S.C. §§ 1956(a)(1)(A)(i) and (B)(i) and 2—Money Laundering and Aiding
and Abetting)

THE GRAND JURY CHARGES THAT:

47.     The factual allegations contained in Paragraphs 5 through 9 are re-alleged
and incorporated as if set forth herein in their entirety.

48.     From on or about July 29, 2017, to on or about August 30, 2017, in the
Eastern District of Virginia and elsewhere, the defendant,

### DARRYL JULIUS POLO a/k/a djppimp,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate
and foreign commerce, namely, by making a payment through Wells Fargo bank account
number x8077 in the name of L.P. to a hosting provider in Canada to rent one or more
servers to host ISIA and websites used to obtain television programs and motion pictures
for ISIA, which involved the proceeds of a specified unlawful activity, that is, criminal
copyright infringement and conspiracy to commit criminal copyright infringement, in the
Eastern District of Virginia and elsewhere, with the intent to promote the carrying on of
that specified unlawful activity, and knowing that the transaction was designed in whole
and in part to conceal and disguise the nature, location, source, ownership, and control of
the proceeds of that specified unlawful activity, and that while conducting and attempting
to conduct such financial transaction knew that the property involved in the financial
transaction represented the proceeds of that specified unlawful activity.

(All in violation of Title 18, U.S. Code, Sections 1956(a)(1)(A)(i) and (B)(i) and 2.)

**COUNT NINETEEN**

(18 U.S.C. §§ 1956(a)(3)(A) and (B) and 2—Money Laundering and Aiding and Abetting)

THE GRAND JURY CHARGES THAT:

49.     The factual allegations contained in Paragraphs 5 through 9 are re-alleged and incorporated as if set forth herein in their entirety.

50.     On or about September 16, 2016, in the Eastern District of Virginia and elsewhere, the defendant,

**DARRYL JULIUS POLO a/k/a djppimp,**

with the intent to promote the carrying on of a specified unlawful activity, namely, criminal copyright infringement and conspiracy to commit criminal copyright infringement, and the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be proceeds of that specified unlawful activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, namely, by making a payment through Wells Fargo bank account number x8077 in the name of L.P. to a company headquartered in Phoenix, Arizona, to purchase Secure Sockets Layer ("SSL") certificates for the servers he used for ISIA, which involved property represented by a law enforcement officer and agent to be proceeds of that specified unlawful activity in the Eastern District of Virginia and elsewhere, and property used to conduct and facilitate that specified unlawful activity.

(All in violation of Title 18, U.S. Code, Sections 1956(a)(3)(A) and (B) and 2.)

43

## NOTICE OF FORFEITURE

(18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 982(a)(1); 18 U.S.C. § 2323;
21 U.S.C. § 853; 28 U.S.C. § 2461(c))

51.     The allegations contained in Paragraphs 1 through 9 and Counts One through Nineteen of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture.

THE GRAND JURY HEREBY FINDS THAT:

52.     There is probable cause that the property described in this NOTICE OF FORFEITURE is subject to forfeiture pursuant to the statutes described herein.

**Notice as to Counts One through Nineteen as to All Defendants**

53.     Pursuant to Federal Rule of Criminal Procedure 32.2(a), the United States of America gives notice to all defendants that, in the event of a conviction of any of the offenses charged in Counts One through Nineteen of this Indictment, the United States intends to forfeit the property of that defendant as is further described in this FORFEITURE NOTICE.

54.     Pursuant to 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c), each defendant who is convicted of conspiracy to commit criminal copyright infringement, in violation of 18 U.S.C. § 371, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy.

55.     Pursuant to 18 U.S.C. § 2323, each defendant who is convicted of criminal copyright infringement, in violation of 17 U.S.C. § 506 and 18 U.S.C. § 2319, shall forfeit to the United States:

     a.     any article, the making or trafficking of which is, prohibited under 17 U.S.C. § 506 or 18 U.S.C. § 2319;

     b.     any property used, or intended to be used, in any manner or part to commit or facilitate the commission of a violation of or 17 U.S.C. § 506 or 18 U.S.C. § 2319; and

     c.     any property constituting or derived from any proceeds obtained directly or indirectly as the result of the commission of a violation of 17 U.S.C. § 506 or 18 U.S.C. § 2319.

56.     Pursuant to 18 U.S.C. § 982(a)(1), each defendant who is convicted of money laundering, in violation of 18 U.S.C. § 1956, shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property.

### Property Subject to Forfeiture

57.     The United States of America gives notice to all defendants that the property to be forfeited includes, but is not limited to, the following:

1.     Drobo 5D direct attached storage array, model DRDR5-A, serial number DRB141901700606, containing a Plextor M6M 64GB mSATA solid state drive, model PX-64M6M, provided by **KRISTOPHER LEE DALLMANN** to agents on or about November 20, 2017;

2.     The following items seized on or about November 16, 2017, from a house in Las Vegas, Nevada, used by **DALLMANN** for Jetflicks:

     a.     Apple watch, red, serial number FHLQLH18G9J;

     b.     Supersonic Magnum 128GB thumb drive, black and blue;

     c.     HTC Nexus tablet, serial number HT4CMJT00031;

d. Small computer, make unknown, serial number W0377NV1103000249;

e. Toshiba 512GB solid state drive, serial number 41BS10G0TL0Z;

f. Seagate 2TB hard drive, serial number 534RJ9FG520158;

g. Seagate 2TB hard drive, serial number W1E3105H;

h. Seagate 2TB hard drive, serial number W1E31WCL;

i. Apple MacBook Pro computer, serial number C02T402FGTFN;

j. Computer in Thermaltake case, serial number W0377NV1103000426;

k. Apple Mac mini computer inside blue Jetflicks case;

l. Apple Mac mini computer, serial number YM9522Q09G5;

m. Apple Mac mini computer, serial number YM0022V29GJ;

n. Apple Mac mini computer, serial number YM0037KK9GS;

o. Apple Mac mini computer, serial number YM00830T9GS;

p. Apple Mac mini computer, serial number C07DL5K3DD6H;

q. Apple Mac mini computer, serial number C07DL2YXDD6H;

r. Apple Mac mini computer, serial number C07CT2S6DD6H;

s. Apple Mac mini computer, serial number C07DR0ZFDD6H;

t. Apple Mac mini computer, serial number C07HP3XUDJD0;

u.      Apple Mac mini computer, serial number
        C07DL37JDD6H;

v.      Apple Mac mini computer, serial number
        C07DL1E3DD6H;

w.      Apple Mac mini computer, serial number
        C07CU87FDD6K;

x.      Apple Mac mini computer, serial number
        C07TJ67LYDJD0;

y.      Apple Mac mini computer, serial number
        C07F3098DD6K;

z.      Apple Mac mini computer, serial number
        C07DH0BWDD6K;

aa.     Apple Mac mini computer, serial number
        C07G31X0DJY7;

bb.     Apple Mac mini computer, serial number
        C07DL242DD6H;

cc.     Apple Mac mini computer, serial number
        C07CT2LJDD6H;

dd.     Apple Mac mini computer, serial number
        C07CV81TDD6K;

ee.     Apple Mac mini computer, serial number YM0061RLB9X;

ff.     Apple Mac mini computer, serial number YM00223W9G5;

gg.     Seagate 7200.12 hard drive, serial number
        9VP3G20PST310005284S;

hh.     Hitachi 640GB hard drive, serial number
        5Q010006L66KA;

ii.     HP Invent hard drive, serial number 3QN42CLS;

jj.     Seagate 1TB hard drive, serial number 9VPDQLGX;

kk.   Nokia phone, white;

ll.   Hitachi hard drive, serial number YAGHX54T;

mm.   WD hard drive, serial number WCC4MFMFDFLW;

nn.   HP Invent 146GB hard drive, serial number 3QN41B49;

oo.   Western Digital 1.5TB hard drive, serial number WMAZA9236231;

pp.   Hitachi hard drive, serial number YAGKXVDT;

qq.   Seagate hard drive, serial number 9V51JTR5;

rr.   Hitachi hard drive, serial number YAGE3M2V;

ss.   Western Digital 500GB hard drive, serial number WCAWFD720905;

tt.   Apple hard drive, serial number C86L27UYDVZR;

uu.   Seagate 500GB hard drive, serial number 9QGA49FC;

vv.   WD 1.5TB 64MB cache hard drive, serial number WMAZA9270726;

ww.   WD 1.5TB 64MB cache hard drive, serial number WMAZA9306965;

xx.   Seagate 1TB hard drive, serial number 6VPG32CI;

yy.   WD hard drive, serial number WMC0T0334864;

zz.   Seagate hard drive, serial number 9QJ0YT88;

aaa.   WD 64MB cache hard drive 1.5TB, serial number WMAZA9272582;

bbb.   DN computer thumb drive;

ccc.   Apple Mac mini computer, serial number C07DL2ZVDD6H;

48

ddd.   Apple Mac mini computer, serial number
C07DL2X8DD6H;

eee.   Apple Mac mini computer, serial number
C07DL2DVDD6H;

fff.   Seagate 4TB hard drive, black, serial number MA0PG3N;

ggg.   Samsung Tablet, black, in OtterBox, with Windows Vista;

hhh.   Apple Mac mini computer, serial number
C07DR0L4DD6H;

iii.   OWC hard drive, serial number HYD0M1046E004G;

jjj.   G-Technology G-RAID 4TB dual hard drive, serial number
TR2122000527;

kkk.   G-Technology G-RAID 4TB dual hard drive, serial number
W708050479;

lll.   Sprint SIM card, serial number 89Q1120200;

mmm.   SanDisk 16GB thumb drive, SDCZ33;

nnn.   G-Force 320GB hard drive, serial number VPKHHSRJ;

ooo.   BMW 8GB micro SD card;

ppp.   MacBook Pro computer, serial number
C02Q52MKQPWQ;

qqq.   Apple TV, serial number C1MQT5KSGXH8;

rrr.   iPad tablet 16GB, serial number DQVEXL5PDFHW;

sss.   Apple Mac mini computer, serial number C07J79R2DJD0;
ttt.   Elgato Game Capture HD60, serial number
AX46D5AX2190;

uuu.   S Drive MWI 320GB hard drive in case, serial number
NER0LDVG;

vvv.   Apple Mac mini computer, model A1345, serial number C07J68GXDJD0MACWI;

www.   Samsung tablet, model GT-N80732W, serial number R32C708X2WR;

xxx.   Apple laptop, serial number WQ044X9NATM;

yyy.   ASUS tablet, model TF300T, serial number 15100-03040100KS;

zzz.   Samsung 16 GB tablet, model SM-T320, serial number RF2F20WKM8B;

aaaa.   ASUS Nexus tablet, black;

bbbb.   Apple Mac Pro computer, model A1289, serial number YM01109120G;

cccc.   Sony PlayStation Vita with memory card, serial number 4652437-PCH2001;

dddd.   Google cell phone, model G-2PW2100, blue and white;

eeee.   Sandisk Cruzer Micro 2.0GB thumb drive, SDCZ6-2048RB;

ffff.   Five USB Devices including; 64 GB Sony serial number USM64CA1 17220BGGNW, Nintendo Switch Mariokart8 serial number AABPA13A000, Apple MacBook Air stick containing drivers serial number A1384, Smith & Wesson Connect thumb drive, and a device labled Elite by Centron;

gggg.   Polaroid Cube camera;

hhhh.   LaCie hard drive, model LRD0TU6, serial number NL3518ZS-HD;

iiii.   Microsoft Xbox 360, serial number 562319214105;

jjjj.   Kingston DataTraveler 4GB thumb drive, model DT108, on keychain;

kkkk.   LG smart watch, serial number 705KPTM009;

llll.   Apple iPad with red case, serial number DMPRJ097GXQ7;

mmmm.  Apple computer tower, model A1289, serial number H09352JV20H;

nnnn.   Duracell 64GB thumb drive;

oooo.   PNY 32GB thumb drive;

pppp.   LaCie hard drive, model LRD0TU1, serial number 99991506121345Q;

qqqq.   Home-built computer in Thermaltake case; and

rrrr.   Super Micro server, serial number L82600052KF1358.

3.   The following items seized on or about November 16, 2017, from a second house in Las Vegas, Nevada, used by **DALLMANN** for Jetflicks:

a.   Apple MacBook Pro computer, model A1398, serial number C02J326PF51R;

b.   NexStar Sata 6GB hard drive, model NST-366S3, serial number 0657108425;

c.   SIIG SuperSpeed USB 3.0 to Sata 2.5" enclosure;

d.   Apple iPhone, white, model A1387, serial number DQGHJ01QDTDW;

e.   Seagate 1TB had drive, serial number NA0P0CRG;

f.   Apple iPad 64GB tablet, model A1397, serial number DLXFD5N5DKPN;

g.   Toshiba laptop, part number PSR20U-00T009, serial number 76027480J; and

h.   Dell computer, CN-0H4313-42940-44K-0BUB, serial number J3ZF451.

4.     The following items seized on or about November 16, 2017, from a house in Las Vegas, Nevada, used by **DARRYL JULIUS POLO a/k/a djppimp** for ISIA:

    a.     ASUS tablet, silver, serial number C8OKAS022381;

    b.     Toshiba hard drive, red, serial number 76VETTIVTPGC;

    c.     WD "My Passport Ultra" hard drive, serial number WXG1A96ESY9F;

    d.     Seagate Expansion portable hard drive, serial number NA8C4BKK;

    e.     Sandisk 4GB thumb drive, black and white, model SDZC36-004G, serial number BH0904NVPN;

    f.     Apple MacBook Pro, silver, serial number C0ZN60E1GQC;

    g.     Seagate Expansion desktop hard drive, black, model SRD0NFZ, serial number NA8F94HM;

    h.     LG Computer Tower in Cooler Master case, serial number RC310BKR20094500338;

    i.     Seagate Expansion desktop hard drive labeled "Wii-U", black, serial number NA8F7RU5;

    j.     Seagate Expansion desktop hard drive labeled "Xbox-360," black, serial number NA8F7RTK;

    k.     Seagate Expansion desktop hard drive labeled "PS-3," black, serial number NA8F7JZA;

    l.     Apple MacBook Air, silver, serial number C17MXDB3G085;

    m.     DREVO X1 60 GB solid state drive, serial number TSTA17616601528;

    n.     Computer tower in Corsair case, serial number 054615029704;

52

o.   Computer tower in Thermaltake case, serial number CA1B600F1NN02MI000197;

p.   Toshiba 500 GB hard drive, serial number Z370CL58T;

q.   HGST hard drive, part number 0FI4696, serial number LAGJZ1ZH;

r.   Computer tower serial number 1480237;

s.   Computer tower in Thermaltake case, white, serial number VN40006WTN1201007225;

t.   SoftLayer server, serial number NCUREK0052;

u.   Hitachi hard drive, serial number 100413PBPA088BDP887L;

v.   Seagate Backup Plus portable hard drive, serial number NA98GTM8;

w.   Unirex 8GB thumb drive;

x.   Kingston 8GB Micro SD card serial number 5150885508;

y.   Apple iPhone, model A1688, gold and white;

z.   Grey Apple iPhone X;

aa.  Samsung Galaxy S6 Edge cell phone, model SM-G92ST, IMEI number 359715061543880;

bb.  Seagate Constellation hard drive, model ST31000524NS, serial number 9WK3NL8N;

cc.  Samsung 1TB hard drive, model HD103SJ, serial number S246J9FB904548; and

dd.  Toshiba laptop computer, blue, part number PLLB0U-015008.

4.   The following domain names used by **DALLMANN** for Jetflicks: jetflicks.mobi, jetflicks.net, and jetflicks.com; and

5.      The following domain names used by **POLO** for ISIA: istreamitall.com
and istreamitall.mobi.

### Substitute Assets

58.      If any of the property described above, as a result of an act or omission of

the defendants,

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred to, sold to, or deposited with a third party;

      c.      has been placed beyond the jurisdiction of the Court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided

        without difficulty,

the United States shall be entitled to and intends to seek forfeiture of substitute property

pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. §§ 982(b)(1) and

2323(b)(2), and 28 U.S.C. § 2461(c).

(In accordance with Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) & (b)(1), and 2323; Title 21, U.S. Code, Section 853(p); Title 28, U.S. Code, Section 2461(c); and Rule 32.2(a), Federal Rules of Criminal Procedure.)

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

A TRUE BILL:

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

ALEXANDER P. BERRANG
ASSISTANT UNITED STATES ATTORNEY

_____
Foreperson of the Grand Jury

MATTHEW A. LAMBERT
SENIOR COUNSEL
COMPUTER CRIME AND INTELLECTUAL PROPERTY SECTION
U.S. DEPARTMENT OF JUSTICE