## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 1:19-CR-253 |
| v. | The Honorable T.S. Ellis, III |
| KRISTOPHER LEE DALLMANN, | |
| DARRYL JULIUS POLO,<br>    a/k/a djppimp, | |
| DOUGLAS M. COURSON, | |
| FELIPE GARCIA, | |
| JARED EDWARD JAUREQUI ,<br>    a/k/a Jared Edwards, | |
| PETER H. HUBER, | |
| YOANY VAILLANT,<br>    a/k/a Yoany Vaillant Fajardo, | |
| LUIS ANGEL VILLARINO, | |
| *Defendants.* | |

## MOTION FOR ORDER AUTHORIZING
## ALTERNATIVE PROCEDURES FOR VICTIM NOTIFICATION

The United States of America, by and through G. Zachary Terwilliger, U.S. Attorney,

Alexander P. Berrang, Assistant U.S. Attorney, and Matthew A. Lamberti, Senior Counsel,

Computer Crime and Intellectual Property Section of the U.S. Department of Justice, move this

Court for entry of an Order authorizing the government to use alternative procedures to notify

potential victims in the above-captioned case under the Crime Victims' Rights Act (CVRA), 18

U.S.C. § 3771.

## BACKGROUND

In support of this Motion, the government proffers the following:

1.      On August 27, 2019, a federal grand jury in the Eastern District of Virginia returned an indictment that charged Kristopher Lee Dallmann, Darryl Julius Polo, Douglas M. Courson, Felipe Garcia, Jared Edward Jaurequi, Peter H. Huber, Yoany Vaillant, and Luis Angel Villarino with conspiring to commit criminal copyright infringement.  The indictment also charged Dallmann and Polo with additional criminal copyright infringement offenses and related money laundering offenses.

2.      In this case, the defendants reproduced tens of thousands of different copyrighted television episodes without authorization, and distributed the infringing programs to tens of thousands of paid subscribers located throughout the U.S.  At one point, Jetflicks claimed to have more than 183,200 different television episodes.  One of the defendants, Polo, left Jetflicks and created a competing site based called iStreamItAll (ISIA) that at one point claimed to have 118,479 different television episodes, 3,964 separate television series, and 10,980 individual movies.  Like Jetflicks, ISIA offered unauthorized content for a regular subscription fee to viewers around the United States, and ISIA publicly asserted that it had more content than Netflix, Hulu, Vudu and Amazon Prime.[1]  The two services were not only available to

---

[1] By way of comparison, Flixable—a search engine available at flixable.com that offers a list of movies and television shows currently streaming on Netflix—indicates that, as of the date of this Motion, Netflix is offering 3,919 movies and 1,859 television series.  To legally offer all this content to its subscribers, Netflix either owns the copyright to the works or has bought licenses from the copyright owners.  Netflix spends billions of dollars on licenses each year.  *See* Todd Spangler, *Netflix Spent $12 Billion on Content in 2018.  Analysts Expect that to Grow to $15 Billion This Year*, Variety (Jan. 18, 2019, 2:56 PM PT), *available at* https://variety.com/2019/digital/news/netflix-content-spending-2019-15-billion-1203112090 (last visited September 23, 2019).  In contrast, Jetflicks and ISIA offered pirated content and did not pay for licenses.  So, copyright owners received nothing.

subscribers over the Internet—including many in the Eastern District of Virginia—but specifically designed to work on different types of devices, platforms and software, including numerous varieties of computer operating systems, smartphones, tablets, smart televisions, video game consoles, digital media players, set-top boxes and web browsers.  Essentially, Jetflicks and ISIA were two of the largest unauthorized streaming services in the United States, resulting in the loss of millions of dollars by television program and motion picture copyright owners.

3.     Jetflicks obtained infringing television programs from pirate websites around the world—including some of the globe's largest torrent and Usenet sites specializing in infringing content, such as the Pirate Bay, RARBG and TorrentDay—using various automated computer scripts, often providing episodes to subscribers the day after the shows originally aired on television.  Specifically, the defendants used sophisticated computer code to scour global pirate sites for new illegal content to download, process and store the shows, and then make those episodes available on servers in the United States and Canada to Jetflicks subscribers for streaming and/or downloading.

4.     Polo was part of the computer programming team that built Jetflicks but later left and started ISIA, a competing service that offered not only television programs but also movies. Polo used many of the same automated tools that Jetflicks employed to locate, download, process and store illegal content, and then quickly make those television programs and movies available on servers in Canada to ISIA subscribers for streaming and/or downloading.  In fact, some of the movies offered by ISIA were not yet available for authorized sale, download, or viewing outside a movie theater.

5.     In November 2017, Federal Bureau of Investigation agents searched Dallmann's and Polo's residences in Las Vegas, Nevada, pursuant to federal search warrants.  Among other

things, the search of Dallmann's residences resulted in the seizure of what appear to be over 30,000 infringing television episodes on his various devices.

6.      Moreover, as noted above, both Jetflicks and ISIA used servers in Canada to stream and make available for download copyrighted works in the United States.  In November 2017, the United States requested that Canada preserve data on these servers—including Jetflicks' and ISIA's inventories of infringing works—and subsequently asked Canada to provide this data pursuant to the United States-Canada Mutual Legal Assistance Treaty.  Per the United States' request and pursuant to a court order in Canada, law enforcement in Canada seized the data and is currently processing it.  Canadian authorities estimate that a total size of the data seized is around 40 terabytes.[2]

7.      On September 19 and 20, 2019, the Court appointed counsel to represent Polo, Courson, Jaurequi, Huber, Garcia, and Vaillant.  In addition, on September 19, 2019, retained counsel for Villarino filed a notice of appearance.  Now that all but one of the defendants appears to be represented, the government files the instant Motion.

## ANALYSIS

The Crime Victims' Rights Act (CVRA), codified at 18 U.S.C. § 3771, provides certain rights to victims in federal criminal proceedings.  Among these rights is the right to "reasonable, accurate, and timely notice" of public court proceedings.  *Id.* § 3771(a).  The CVRA requires "[o]fficers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime . . . [to] make

---

[2] For comparison, the printed collection of the Library of Congress—the largest library in the world—is commonly estimated to be the equivalent of 10 terabytes.  *See* Pete Pachal, *Sony Supersizes Data Storage with 185-Terabyte Cassette Tape*, Mashable (May 5, 2014), *available at* https://mashable.com/2014/05/05/sony-185tb-tape/ (last visited September 23, 2019).

their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection [3771](a)," *Id.* § 3771(c)(1), and it instructs the Court to "ensure that the crime victim is afforded" those rights, *Id.* § 3771(b)(1). The CVRA defines a crime victim as "a person directly and proximately harmed as a result of the commission of a Federal offense . . . ." *Id.* § 3771(e)(2)(A). Importantly, the CVRA recognizes that for crimes involving multiple victims, the Court has discretion to adopt procedures to accord victim rights without unduly interfering with the criminal proceedings. Thus, 18 U.S.C. § 3771(d)(2) provides:

> In a case where the court finds that the number of crime victims makes it impracticable to accord all of the crime victims the rights described in subsection (a), the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings.

The CVRA places no limitations on the alternative procedures that a court may fashion other than that the procedures be reasonable to effectuate the act and that they "not unduly complicate or prolong the proceedings." *Id.*

In this case, under the CVRA, a victim could potentially include any copyright owner of a television program or motion picture that was illegally offered for streaming or download on Jetflicks or ISIA. That could include well over 100,000 different copyrighted works with thousands of potential victims, ranging from large movie and TV show studios to small independent producers.

The United States does not know precisely how many copyright owners would qualify as victims under 18 U.S.C. § 3771. Moreover, even if the United States did know, individually noticing each of these potential victims would be, at a minimum, exceedingly burdensome, complicated, and time-consuming. Indeed, neither the government nor the Court has the resources to accord every potential victim individualized notice required by § 3771(a).

Therefore, due to the uncertainty regarding the identity of all of the potential victims in this case, as well as the large number of such potential victims, the United States would use—with the Court's permission—the Department of Justice's website for large cases, http://justice.gov/largecases, to direct victims to a case-specific website where all required notices would be posted.  The United States would also issue a press release informing individuals who believe that they may be victims to access the Department of Justice website for more information.  Subsequently, victim notification at the post-sentencing stage would be provided through the Bureau of Prisons' website, www.bop.gov.

Ample precedent exists to use alternative notification procedures under the CVRA in such a situation.  In fact, in other cases where the government could not determine precisely which entities and individuals would qualify as victims under 18 U.S.C. § 3771(d)(2) and large numbers of such potential victims were involved, courts have routinely permitted the United States to use alternative methods to notify potential victims.  *See, e.g.*, *United States v. Bondarenko*, No. 2:17-CR-306-JCP-PAL, 2018 WL 1413972, at *2 (D. Nev. 2018) (granting government's motion to notify victims pursuant to the CVRA via the Justice Department's website in case involving the "large-scale trafficking of compromised credit card data"); *United States v Babich*, 301 F. Supp. 3d 213, 217–18 (D. Mass. 2017) (granting government request for alternative notification procedures in healthcare fraud prosecution but with restrictions on the information to be conveyed to potential victims); *United States v. Merrill*, No. 14-40028-TSH, 2014 WL 6387368, at *2 (D. Mass November 14, 2014) (similar); *United States v. Saferstein*, No. 07-CR-557, 2008 WL 4925016, at *3–4 (E.D. Pa. November 18, 2008).

Accordingly, the United States respectfully requests that the Court authorize the use of alternative notification methods to meet the government's obligations under the CVRA.

## CONCLUSION

For the reasons stated herein, the United States requests that the Court grant the instant

Motion and enter the proposed Order.


Respectfully submitted,


Date: September 23, 2019                    G. Zachary Terwilliger
                                            United States Attorney


                                            _____/s/_____
                                            Alexander P. Berrang
                                            Assistant United States Attorney
                                            United States Attorney's Office
                                            2100 Jamieson Avenue
                                            Alexandria, Virginia 22314
                                            Phone: (703) 299-3700
                                            Fax: (703) 299-3981
                                            Email: Alexander.P.Berrang@usdoj.gov


                                            _____/s/_____
                                            Matthew A. Lamberti
                                            Senior Counsel
                                            Computer Crime and Intellectual Property Section
                                            United States Department of Justice
                                            1301 New York Avenue, NW, Suite 600
                                            Washington, DC 20530
                                            Phone: (202) 514-1026
                                            Email: Matthew.Lamberti@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 23, 2019, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of that electronic filling

(NEF) of the foregoing to the attorneys for the defendants.


By:               /s/

                Alexander P. Berrang
                Assistant United States Attorney
                U.S. Attorney's Office
                2100 Jamieson Avenue
                Alexandria, Virginia 22314
                Phone: (703) 299-3700
                Fax: (703) 299-3981
                Email:  Alexander.P.Berrang@usdoj.gov