# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 1:19-CR-253 |
| v. | The Honorable T.S. Ellis, III |
| KRISTOPHER LEE DALLMANN, | |
| DOUGLAS M. COURSON, | |
| FELIPE GARCIA, | |
| JARED EDWARD JAUREQUI, a/k/a Jared Edwards, | |
| PETER H. HUBER, and | |
| YOANY VAILLANT, a/k/a Yoany Vaillant Fajardo | |
| *Defendants*. | |

### GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE AND LIMIT CERTAIN ARGUMENTS, LINES OF QUESTIONING, AND EVIDENCE AT TRIAL

The United States of America, by and through the undersigned, respectfully moves this Court *in limine* for an order excluding arguments, lines of questioning, and evidence at trial related to the following: (1) any of the defendants' mental or physical health conditions; (2) the potential penalty or punishment the defendants will face if convicted; (3) any self-serving hearsay statements; and (4) any argument that defendants are being selectively prosecuted. Each of these categories of information should be excluded at trial because they are irrelevant to the charges against the defendants, and, even if relevant, would be unduly prejudicial, and/or are otherwise inadmissible.

**BACKGROUND**

As alleged in the indictment, the defendants operated Jetflicks, an online, subscription-based service that permitted users to stream (and, at times, to download) copyrighted works without the permission of the copyright owners. Jetflicks operated on a large scale. As part of the conspiracy, the defendants developed, refined, and used automated tools and computer scripts to amass a huge inventory of copyrighted television shows from online sources. Then, after downloading these shows, the defendants would process, store, and make these shows available to tens of thousands of subscribers around the United States for streaming and/or downloading. Because Jetflicks sourced its content from pirate sites, it did not pay for the original works or pay any license fees to copyright owners for the use of those works.

The defendants were well aware that Jetflicks was violating copyright law. For instance, text messages recovered from a cellphone belonging to Mr. Dallmann show that in January 2017, Mr. Dallmann and Mr. Courson discussed an "ad campaign" for Jetflicks that would use graphics and fonts from television shows. Over the course of the conversation, Mr. Dallmann explained that he wanted to use the graphics to "get some buzz going and new signups," "[b]ut [he] didn't want to draw unnecessary attention to us" and wanted to "keep [himself] legally solvent ☺." After Mr. Dallmann pondered if he could avoid trouble by "adding 'Images copyright NBC/Universal' or whatever…" to the Jetflicks advertisements, Mr. Courson pointed out, "Well the problem comes if you don't have permission to use their show in jetflicks, but all they could do at first is tell you to stop." Seconds later, Mr. Dallmann commented, "LOL" and then "Well, we always have faced that issue, haha." The pair soon thereafter exchanged the following messages:

| Sender | Message |
|---|---|
| Kristopher Dallmann | So give me an example of what you would put as small print at the bottom of the page for Big Bang theory... and I dunno... Star Trek |
| Douglas Courson | But think of like the Super Bowl, only specific outlets are allowed to use the term "Super Bowl" the rest have to refer to it as the big game. Because the NFL vigorously defends the name |
| Kristopher Dallmann | and I'll just use that as a template swapping out NBC or FOX, logo, etc |
| Douglas Courson | I wouldn't touch Star Trek as the is a huge franchise and I suspect they would come after you right away |
| Kristopher Dallmann | Well, the NFL is ran by crazy people... one reason we don't do any sporting events is because they are so sue happy and copyright nazi's |

Numerous examples showing how the defendants willfully conspired and worked together to steal others' intellectual property abound, and some have been detailed in prior filings. As a result, the government does not repeat them here.

The FBI interviewed all of the defendants except for Mr. Garcia during the course of its investigation. Each of the interviewed defendants gave voluntary statements. Some of the statements provided were inculpatory while others were self-serving and false denials of culpability. In addition, two of the defendants made reference to certain medical conditions. Mr. Dallmann claimed he started Jetflicks to earn money to pay for certain medical expenses, and Mr. Courson claimed to suffer from a health condition that affects his long-term memory.

## ARGUMENT

Each of the categories of evidence that the Government seeks to exclude—namely, those pertaining to the defendants' mental or physical health conditions, the potential penalty or punishment the defendants will face if convicted, self-serving hearsay statements, and arguments

3

that defendants are being unfairly prosecuted—are irrelevant to the trial of the issues properly before the jury and are, accordingly, inadmissible under the Federal Rules of Evidence. *See* Fed. R. Evid. 401 (providing that evidence is relevant only if it tends to "make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action"). Moreover, many of the aforementioned statements constitute inadmissible hearsay and are excludable on that basis, too.

## I.     The Elements of the Charged Offenses

In analyzing relevance, the Court should consider the elements of the charged offenses. *United States v. Hedgepeth*, 418 F.3d 411, 419–20 (4th Cir. 2005). Evidence that does not assist the jury in making a determination regarding one of the elements of the charged offenses should be excluded. *Id.*

### A.     Charges Involving All Remaining Defendants

All of the defendants currently set to go to trial have been charged with one count of conspiracy to commit criminal copyright infringement in violation of 18 U.S.C. § 371. "To prove a conspiracy under 18 U.S.C. § 371, the government must establish an agreement to commit an offense, willing participation by the defendant[s], and an overt act in furtherance of the conspiracy." *United States v. Tucker*, 376 F.3d 236, 238 (4th Cir. 2004). Because the object of the conspiracy is criminal copyright infringement, the agreement element requires the government to show that the defendants joined together for purposes of willfully infringing a copyrighted work for commercial advantage or private financial gain by reproducing or distributing within a 180 day period 10 or more copies of the copyrighted work having a total retail value of more than $2,500. *See* 18 U.S.C. § 2319(b); 17 U.S.C. § 506(a)(1)(A). An act is done willfully when it is committed with the specific intent to disobey or recklessly disregard the

4

law. *See Bryan v. United States*, 524 U.S. 184, 191–92 (1998); *United States v. Blankenship*, 846 F.3d 663, 673 (4th Cir.), *cert. denied*, 138 S. Ct. 315 (2017).

### B. Additional Charges Involving Mr. Dallmann

Mr. Dallmann also has been charged with a number of additional counts. In particular, he faces four substantive criminal copyright infringement charges and three money laundering charges.

Counts Two through Five of the Indictment charge Mr. Dallmann with criminal copyright infringement by reproduction or distribution and aiding and abetting, in violation of 17 U.S.C. §§ 506(a)(1)(A) and 18 U.S.C. §§ 2319(b)(3). These charges require the government to prove three elements beyond a reasonable doubt. First, there was a valid copyright for the work involved. Second, Mr. Dallmann infringed the copyright (by reproduction or distribution for Counts Two and Three and by public performance for Counts Four and Five). Third, Mr. Dallmann did so willfully and for the purpose of commercial advantage or private financial gain. *See* Eric Wm. Ruschky, Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina at 440–41 (2018 Online Edition); 3 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Criminal, ¶ 54A.02, Instr. 54A-9 (Matthew Bender 2019).

Counts Twelve to Fourteen charge Mr. Dallmann with money laundering promotion and concealment and aiding and abetting, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (B)(i). The government must prove the four elements beyond a reasonable doubt. First, Mr. Dallmann conducted or attempted to conduct a financial transaction that in any way or degree affected interstate commerce or that involved the use of a financial institution which is engaged in, or the activities of which affect, interstate commerce in any way or degree. Second, the property that was the subject of the transaction involved the proceeds of specified unlawful activity. Third,

5

Mr. Dallmann knew that the property involved represented the proceeds of some form of unlawful activity. Fourth, Mr. Dallmann engaged in the financial transaction with the intent to promote the carrying on of specified unlawful activity, or he knew that the transaction was designed in whole or in part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity. *See United States v. Wilkinson*, 137 F.3d 214, 220 (4th Cir. 1998) (*en banc*).

Finally, Count Fifteen charges Mr. Dallmann with sting money laundering and aiding and abetting, in violation of 18 U.S.C. §§ 1956(a)(3)(A) and (B). This offense requires the government to prove three elements beyond a reasonable doubt. First, Mr. Dallmann conducted or attempted to conduct a financial transaction that affected interstate commerce in any way or degree. Second, the transaction involved property represented by a law enforcement officer, and believed by Mr. Dallmann, to be the proceeds of some form of unlawful activity. Third, Mr. Dallmann did so with intent to either promote the carrying on of specified unlawful activity, or conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of the unlawful activity. *See* 3 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Criminal, ¶ 50A.05, Instr. 50A-21 (Matthew Bender 2019).

## II. The Categories of Evidence Discussed Below Are Inadmissible

As set forth more fully below, the defendants should not be permitted to make arguments about, ask questions about, or introduce facts regarding the four categories of evidence addressed in this Motion. None of this evidence would assist the jury as factfinder and thus is irrelevant. Moreover, some of this evidence would constitute inadmissible hearsay. Furthermore, even if the Court were to find that any of this information was relevant and did not violate the rules against hearsay, it still would be properly excluded at trial. Federal Rule of Evidence 403

provides for the exclusion of relevant evidence where "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. And, it is well established that district courts have "'wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *United States v. Smith*, 441 F.3d 254, 266 (4th Cir. 2006) (quoting *Del v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

### 1. Evidence of the Defendants' Physical or Mental Health

The defendants should be precluded from introducing any evidence, making any statement, or asking any questions regarding any of the defendants' physical or mental health. Absent a defendant showing that his physical or mental health somehow prevented him from forming the requisite *mens rea*, such evidence is irrelevant to the charged offenses. None of the elements of the offenses outlined above turns on whether a defendant had (or did not have) a particular medical condition. Likewise, neither needing money to pay for a medical condition nor having long-term memory problems are a defense to the charged offenses. Accordingly, admission of such evidence would serve only to appeal to the sympathies of the jury and should be excluded at trial. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) (explaining that unfairly prejudicial evidence is evidence that has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one" (quoting Advisory Committee's Notes on Fed. R. Evid 403)); Fed. R. Evid. 401, 402, and 403; *see also, e.g.*, *United States v. Reddick*, 203 F.3d 767, 771 (10th Cir. 2000) (affirming trial court's preclusion of defense that did not pertain to elements of the charged defense); *United States v. McCauley*,

7

1:18-CR-330, Dkt. 77 at 9 (concluding that evidence regarding the current state of defendant's health was unfairly prejudicial and inadmissible under FRE 403) (Ellis, J.).

### 2. References to Potential Punishment Upon Conviction

The Court also should bar the defendants from attempting to inform the jury through testimony, questions, or argument that they face imprisonment if convicted. Any punishment or consequence the defendants might suffer is irrelevant to the factual issues and would only appeal to the jury's sympathies, and would thus be inadmissible under Federal Rules of Evidence 401, 402, and 403.

Courts have uniformly held that disclosing information to a jury about potential punishments upon conviction is impermissible. For instance, in *United States v. Shannon*, 512 U.S. 573 (1994), the Supreme Court reaffirmed the "well established" rule that a jury must "'reach its verdict without regard to what sentence might be imposed,'" *id.* at 579 (*quoting Rogers v. United States*, 422 U.S. 35, 40 (1975)). The Court explained that information regarding the consequences of a guilty verdict is "irrelevant" to the jury's task of finding the facts and applying them to the criminal law as charged. *Id.* Moreover, allowing the jury access to such information "invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.* (citations omitted). In addition to being irrelevant, any references to the defendants' possible punishment would only be designed to evoke jurors' sympathies in an attempt to encourage a nullification verdict.

### 3. Defendants' Exculpatory Statements

In addition, this Court should preclude the defendants and their attorneys from introducing any evidence, making any statement, or asking any questions that include or could be reasonably expected to elicit the defendants' self-serving hearsay. It is axiomatic that a

defendant's *inculpatory* statements when offered by the government, are generally admissible as admissions of a party opponent. *See* Fed. R. Evid. 801(d)(2); *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996). They are also admissible when offered by the government as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E). *See Bourjaily v. United States*, 483 U.S. 171, 183 (1987). And the government can offer the defendant's *false exculpatory* statements into evidence to show his or her guilty state of mind. *See United States v. Kaplan*, 832 F.2d 676, 687 (1st Cir. 1987).

Yet, a defendant may not offer his or her own self-serving exculpatory statements since these are inadmissible hearsay, even if made contemporaneously with other inculpatory statements. *See Williamson v. United States*, 512 U.S. 594, 599 (1994) (finding "[t]he fact that a person is making a broadly self-inculpatory confession does not make credible the confession's non-self-inculpatory parts"). Examples of defendants attempting to slip in favorable evidence through a "back door" abound. For example, defendants have sought to cross-examine the government's witnesses about self-serving, exculpatory portions of otherwise inculpatory statements, and have attempted to use the rule of completeness, which is codified in Federal Rule of Evidence 106, to argue that the testimony is admissible. Yet, the Fourth Circuit has unequivocally held that "the rule of completeness does not 'render admissible . . . evidence which is otherwise inadmissible under the hearsay rules.' Nor does the rule of completeness 'require the admission of self-serving, exculpatory statements made by a party which are being sought for admission by that same party.'" *United States v. Hassan*, 742 F.3d 104, 134 (4th Cir. 2014) (quoting *United States v. Lentz,* 524 F.3d 501, 526 (4th Cir.2008)).

### 4. Selective Prosecution

An additional line of questioning, argument, or evidence that the Court should exclude at

trial is that the government is unfairly singling out the defendants for prosecution. This is so for two reasons.

First, it is not a defense to claim that others have engaged in copyright infringement but were not prosecuted. This is because such a defense is irrelevant and inadmissible under Rule 403. *See United States v. Fowler*, 932 F.2d 306, 316 (4th Cir. 1991) (noting in a retention, disclosure, and conversion of classified documents prosecution that the district court deemed irrelevant an "'everybody-does-it' defense"). An instructive case in this regard is *United States v. Oldbear*, 568 F.3d 814 (10th Cir. 2009). There, the defendant, who had been indicted for embezzling federal tribal funds, sought to call several witnesses who "would have testified that they, like Oldbear, were allowed to use tribal funds to pay for personal transportation expenses." *Id*. at 821. The district court barred their testimony as irrelevant and inadmissible under Rule 403. The Tenth Circuit affirmed the district court, ruling that "only Oldbear's actions and state of mind were material to her guilt." *Id*. According to the Court, the mere "fact that others may have been the beneficiaries of improper conduct does nothing to excuse Oldbear." *Id*. This type of "everybody-is-doing-it" defense was immaterial to the defendant's guilt and would have created a "sideshow from which the jury could have gleaned little valuable information." *Id*.

Such a defense, moreover, only would be effective if the defendants admitted specific instances or examples of copyright infringement that went unprosecuted. Yet, such evidence would not be probative on the issue of whether the defendants committed the charged crimes, and the introduction of such evidence would force mini-trials over the similarities and differences between the present prosecution and other specific instances of copyright infringement. *See also United States v. Dooley*, 578 F.3d 582, 590–91 (7th Cir. 2009) (affirming

10

exclusion of evidence of possible previous thefts as irrelevant and potentially confusing and distracting to the jury).

Second, if the defendants wish to argue that they are being unfairly prosecuted, then the proper vehicle for raising such a claim is not in argument to the jury but rather through a pretrial motion to dismiss for selective prosecution. Such a motion, however, will be fruitless. Selective prosecution claims are governed by "ordinary equal protection standards." *Wayte v. United States*, 470 U.S. 598, 608 (1985). Absent proof of an explicit discriminatory classification, a criminal defendant alleging selective prosecution must establish both (1) that "he has been 'singled out' while others similarly situated have not been prosecuted; and (2) that the decision to prosecute was 'invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to exercise his constitutional rights.'" *United States v. Greenwood*, 796 F.2d 49, 52 (4th Cir. 1986) (citation omitted); *see also United States v. Passero*, 577 F.3d 207, 219 (4th Cir. 2009) ("Unless a defendant provides 'clear evidence' to overcome the presumption that a government prosecutor has acted lawfully and without discrimination—a 'particularly demanding' standard—he cannot demonstrate a constitutional violation for selective prosecution."). Lawful considerations include "'such factors as the strength of the evidence against a particular defendant, the defendant's role in the crime, . . . the defendant's candor and willingness to plead guilty, the amount of resources required to convict a defendant, the extent of prosecutorial resources, the potential impact of a prosecution on related investigations and prosecutions, and prosecutorial priorities for addressing specific types of illegal conduct.'" *United States v. Lighty*, 616 F.3d 321, 370 (4th Cir. 2010) (quoting *Olvis*, 97 F.3d at 744).

Because of the special considerations implicated by judicial inquiry into an exercise of

prosecutorial discretion, those two elements of the claim must be satisfied by "exceptionally clear proof." *McCleskey v. Kemp*, 481 U.S. 279, 297 (1987).  In the absence of such proof, courts presume that a prosecution for violation of a criminal law has been undertaken in good faith for the purpose of bringing offenders to justice.  *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995).  So, even if the defendants could muster "exceptionally clear proof" of individuals who were not prosecuted for infringing upon the same type and amount of copyrighted works, they would have to address the strength of the evidence against them and provide non-speculative proof that the prosecution was "invidious or in bad faith, *i.e.*, based upon . . . the desire to exercise his constitutional rights.'"  *Greenwood*, 796 F.2d at 52 (citations omitted).

      The fact of the matter is that this prosecution was instituted against these defendants because they engaged in a long running conspiracy to steal and profit from the unauthorized distribution of thousands of copyrighted television shows.  The conspiracy continued despite multiple warnings from copyright holders and third-party service providers, and only ceased once law enforcement intervened.  This prosecution is far from a product of invidiousness or bad faith.  Rather, the defendants are facing criminal penalties because they willingly joined and helped further a conspiracy, and the government has amassed overwhelming evidence of the defendants' guilt.

(CONTINUED ON NEXT PAGE)

## CONCLUSION

For the foregoing reasons, the government asks the Court to prohibit the defendants from making any arguments, soliciting any questions, or introducing any evidence regarding: (1) the defendants' health conditions; (2) the potential penalty or punishment upon conviction; (3) exculpatory hearsay; and (4) selective prosecution.

Respectfully submitted,

Date: June 5, 2020

G. Zachary Terwilliger
United States Attorney

/s/
Monika Moore
Alexander P. Berrang
William E. Fitzpatrick
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: monika.moore@usdoj.gov

/s/
Matthew A. Lamberti
Special Assistant United States Attorney,
    Eastern District of Virginia
Senior Counsel,
    Computer Crime and Intellectual Property Section
United States Department of Justice
1301 New York Avenue, NW, Suite 600
Washington, DC 20530
Phone: (202) 514-1026
Email: Matthew.Lamberti@usdoj.gov

13

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filing (NEF) of the foregoing to the attorneys for the defendants.

/s/
Monika Moore
Assistant United States Attorney
U.S Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: monika.moore@usdoj.gov